UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
R.D., a minor                           )
By his parents and next friends,        )
ISATU KAREEM and R.D.,                  )
                                        )
        Plaintiffs,                     )
                                        )
    v.                                  )        Civil Action No. 04-0953 (PLF)
                                        )
DISTRICT OF COLUMBIA                     )
                                        )
    and                                 )
                                        )
DR. CLIFFORD B. JANEY,[1]               )
                                        )
        Defendants.                     )
_____)


OPINION

        This case, brought under the Individuals with Disabilities Education Act

("IDEA"), 20 U.S.C. §§ 1400 et seq., is an appeal of a Hearing Officer Determination ("HOD")

affirming the decision of the District of Columbia Public Schools ("DCPS") to place plaintiff

R.D. in a part-time special education program at Roosevelt High School.  The case is unusual in

that the HOD was based not only on the substantive soundness of the placement decision, but

also on the Hearing Officer's conclusion that the most recent revision of R.D.'s Individualized

Education Program ("IEP") was initiated at the parent's request for the sole purpose of altering

R.D.'s placement by increasing his prescribed weekly hours of specialized instruction.  Plaintiffs

_____

        [1]      District of Columbia Public Schools Superintendent Dr. Clifford B. Janey has
been substituted for Dr. Robert Rice as a named defendant under Rule 25(d) of the Federal Rules
of Civil Procedure.

seek placement at Accotink Academy and tuition reimbursement for R.D.'s attendance there since September 2004.

The case came before the Court for argument on the parties' cross-motions for summary judgment on June 3, 2005.  For the reasons that follow, the Court grants defendants' motion and denies plaintiffs' motion.[2]

## I.  BACKGROUND

R.D. is a learning disabled and emotionally disturbed seventeen year-old DCPS student, represented in this litigation by his mother and next friend, Isatu Kareem.  He attended SEED Public Charter School ("SEED") for the 2002-03 and 2003-04 school years.  R.D.'s 2003-04 IEP placed him at SEED in a part-time program for 11.5 hours of specialized instruction per week.

An IEP meeting was held on February 10, 2004, for the purposes of (1) reviewing R.D.'s recently-completed Vocational Evaluation; (2) discussing R.D.'s academic, social, and behavioral progress in light of his likely failure of the ninth grade; and (3) developing a new action plan "to better support his unique needs."  See February 10, 2004 IEP, A.R. at 82.

At the February 10 meeting a new IEP was developed, which included a Behavior Intervention Plan, short term objectives, and annual goals for R.D.'s social/emotional and academic development.  The IEP reclassified R.D. from learning disabled-only to learning disabled/emotionally disturbed.  The IEP recommended that R.D. receive 10 hours of specialized academic instruction, one hour of psychological counseling, and 30 minutes of "consultation" per

---

[2]        The parties agree that the pending motion for preliminary injunction is moot.

week, for a total of 11.5 hours, and that he be placed in a part-time special education setting, in a

"combination general education and resource classroom." Because neither R.D. nor a DCPS

placement specialist attended the February 10 IEP meeting, a specific placement was not

discussed.[3] It was agreed that R.D.'s mother would take him for a psychiatric consultation and

SEED would monitor the results of the new BIP, after which the Multidisciplinary Team would

reconvene "to discuss [R.D.'s] most appropriate educational program and placement" with R.D.

and a DCPS representative present. The IEP was signed by all parties in attendance, including

plaintiff's mother and plaintiff's counsel.

After the February 10 IEP was issued, R.D. continued to experience problems at

school. His third-quarter grades included five Fs and two C-minuses, and R.D. continued to

engage in disruptive behavior and experience emotional difficulties. See A.R. at 48-51.[4]

Although R.D.'s mother took him to an initial meeting with a psychiatrist, no psychiatric

evaluation was completed before the Multidisciplinary Team reconvened.

When the Team reconvened on March 30, 2004, R.D. and Dwight Thomas, a

DCPS placement specialist, were in attendance. Mr. Thomas had reviewed the February 10 IEP

and, consistent with that IEP, he proposed a placement at Roosevelt Senior High School, R.D.'s

neighborhood school. See Defs'. Mot. Summ. J. at 10-11. Roosevelt has part-time special

---

[3]     In attendance were plaintiff's mother, Isatu Kareem; plaintiff's and his mother's
counsel, Rebekah Gleason; Katie Brindley, a special education coordinator at SEED; and
Deborah Joyner, a SEED psychologist.

[4]     It is unclear whether R.D.'s third-quarter grades were released before or after the
February 10, 2004 meeting; it also appears that some of the reported disruptive behavior occurred
before the February 10 IEP meeting.

education services but does not offer a full-time program for students with both emotional

disturbances and learning disabilities.  See Declaration of Jim Marsh ¶ 5, Attachment to Motion

for Preliminary Injunction (Oct. 22, 2004).

The parties disagree over what exactly happened at the meeting (although the

Hearing Officer made factual findings on that matter), but an IEP was formulated that increased

R.D.'s prescribed number of hours of specialized instruction per week from 10 to 30, thus taking

R.D. out of the general education curriculum and necessitating his placement in a full-time

special education setting.  The Hearing Officer subsequently found that even before the March 30

meeting, Accotink had been led to believe that there would be a new IEP that had not yet been

prepared or presented.  See HOD at 6, A.R. at 7.  Accotink accepted R.D. as a student before

receiving the March 30 IEP.  Despite plaintiffs' protestations, DCPS did not alter its

determination to place R.D. at Roosevelt.

Within days, plaintiff's mother requested a due process hearing, which was held

on May 5, 2004.  In that petition for a hearing, plaintiffs described the problem as follows: "The

placement proposed [b]y DCPS cannot address the needs on [R.D.'s] IEP.  The parents had

proposed a placement, Accotink Academy, that can meet his needs as described by the team and

on his IEP."  A.R. at 17.  At the hearing, DCPS presented the testimony of its placement

specialist, Mr. Thomas.  Katie Brindley, the SEED special education coordinator, and Anne

Warnke, Assistant Educational Director at Accotink Academy, testified for plaintiffs.

Mr. Thomas testified that the March 30 meeting originally was called only to

discuss R.D.'s placement on the basis of the already-formulated IEP, but that *after* plaintiffs

learned that DCPS proposed to place R.D. at Roosevelt, the meeting (in the words of the Hearing

Officer) "morphed from a placement meeting into an IEP meeting."  See HOD at 5, A.R. at 6.

Thomas testified further that plaintiffs' counsel objected to the proposed placement during the

March 30 meeting, and stated that R.D. needed to be in a full-time therapeutic setting, that

plaintiff's mother wanted a placement at Accotink Academy or Foundations (both are private

schools), and that unless DCPS agreed to placement at one of those schools, plaintiff would

request a due process hearing.  According to Thomas, plaintiff's counsel then *instructed* Ms.

Brindley to "redo the IEP to jack up the hours" of specialized instruction called for from 11.5 per

week to 30 per week.  See Transcript of Due Process Hearing (May 5, 2004) ("Transcr.") at 27.

By contrast, Ms. Brindley testified that although she had proposed the change, she could not

recall why in the March 30 IEP R.D.'s hours of specialized instruction were increased from 10 to

30, or which Team member sought the increase in hours.  See HOD at 5, A.R. at 6.[5]

        Mr. Thomas testified that in his judgment there was no justification for the change

to 30 hours of specialized instruction, especially in light of the fact that R.D. only recently had

been classified as emotionally disturbed, that the current Behavior Intervention Plan incorporated

in the February 10 IEP had been in place only for a short time, and that no new testing or

evaluation of R.D. had been completed between the February 10 and March 30 Team meetings.

---

[5]        Plaintiffs claim that R.D. informally had been receiving additional weekly hours of specialized instruction, so that the jump to 30 hours per week in the March 30 IEP was not as great an increase as it seems.  There appears to be no evidence in the record to support this assertion, however.  Moreover, plaintiffs do not explain why the February 10 IEP had not been similarly revised to account for this.

See Transcr. at 26-31.  Thomas also testified that he objected to the change, but that the other participants effectively ignored his views in formulating the March 30 IEP.  See Transcr. at 28-30.

      The Hearing Officer upheld R.D.'s placement at Roosevelt, finding that "[R.D.'s] 2/10/04 IEP is his current IEP and there exists no persuasive record evidence that Roosevelt SHS cannot implement it."  See HOD at 6, A.R. at 7.  He found that there was "no record evidence . . . that explains why [R.D.'s] specialized instruction hours were increased within 7-weeks from 10-hours on 2/10/04 to 30 hours on 3/30/04 . . . lead[ing] to the inescapable conclusion that the increase in specialized instruction hours was designed to make [R.D.] eligible for a 100% full time day, therapeutic special education program – the type of placement parent's counsel vowed she would obtain at the due process hearing."  Id.  The Hearing Officer found that the March 30 IEP revealed "an incredulous, unconscionable, patently transparent attempt to circumvent the precise letter and spirit of the IDEA to obtain a private placement.  Such conduct shall never be condoned in an IDEA Due Process Hearing."  HOD at 8, A.R. at 9.  In making his finding, the Hearing Officer specifically found Mr. Thomas' testimony credible, and found the testimony of SEED special education coordinator Katie Brindley with respect to the reasons behind the revision of the IEP not credible.  See HOD at 6, A.R. at 7.

      Despite DCPS' placement decision and the unfavorable HOD, R.D.'s parents enrolled him at Accotink, which he has attended since September 2004.  Plaintiffs assert that R.D. has made good progress since being enrolled there.  They seek reimbursement for the costs associated with their unilateral placement decision.

## II.   DISCUSSION

### A.   *Summary Judgment*

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits or declarations, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When considering a summary judgment motion, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255; see also Washington Post Co. v. United States Dep't of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989). [6]

The non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Anderson v. Liberty Lobby,

---

[6]   Summary judgment is an appropriate procedure for resolving a challenge to an agency's administrative decision when review is based upon the administrative record.  Richards v. I.N.S., 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977); see also Fund for Animals v. Babbitt, 903 F.Supp. 96, 105 (D.D.C. 1995) (when deciding summary judgment motion on basis of agency's administrative record, court employs different standard of review than that set forth in Rule 56 of Federal Rules of Civil Procedure).

Inc., 477 U.S. at 249-50.  To defeat summary judgment, a plaintiff must have more than "a scintilla of evidence to support his claims." Freedman v. MCI Telecommunications Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).

### B.  Review for Appeals of IDEA Hearing Officer Determinations

The IDEA permits "any party aggrieved by the findings and decision" rendered during administrative proceedings to "bring a civil action" in state or federal court without regard to the amount in controversy.  20 U.S.C. § 1415(i)(2).  The reviewing court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  Id.  The burden of proof in an IDEA civil action is always on the party challenging the administrative determination, who must "at least take on the burden of persuading the court that the hearing officer was wrong [by a preponderance of the evidence]." Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988).  The Court may not substitute its own views for that of the Hearing Officer, Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982); Shaw v. District of Columbia, 238 F. Supp. 2d 127, 135 (D.D.C. 2002), and a court upsetting the hearing officer's decision "must at least explain its basis for doing so."  Kerkam v. McKenzie, 862 F.2d at 887.

Because of the parties' ability to supplement the record before the district court with new evidence, hearing officer determinations under the IDEA are afforded "less deference than is conventional" for agency decisions.  Kerkam v. McKenzie, 862 F.2d at 887.  In this case, however, neither party has sought to supplement the record with evidence or testimony relevant

to the Hearing Officer's findings.[7]  Where the Hearing Officer's findings are based on credibility

determinations of live witness testimony, as they were here, and there is no supplementation of

the record before the Court, particular deference is due to the Hearing Officer's decision.  See

Shore Reg'l High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 199 (3d Cir. 2004) ("if a state

administrative agency has heard live testimony and has found the testimony of one witness to be

more worthy of belief than the contradictory testimony of another witness, that determination is

due special weight."); see also Amanda J. v. Clark County Sch. Dist., 267 F.3d 877, 889 (9th Cir.

2001) (traditional notions of the deference owed to the fact finder compel conclusion that state

review panel should defer to hearing officer's credibility determinations of witnesses); Carlisle

Area Sch. v. Scott P., 62 F.3d 520, 528-29 (3d Cir. 1995) (in two-tiered state administrative

system under IDEA, "credibility-based findings [of a hearing officer] deserve deference unless

non-testimonial, extrinsic evidence in the record would justify a contrary conclusion or unless the

record read in its entirety would compel a contrary conclusion.").

## C.  Hearing Officer's Decision in this Case

It is clear from the Administrative Record that the Hearing Officer concluded that

it was appropriate to deal only with the IEP developed at the February 10 meeting, an IEP to

which all in attendance agreed, rather than the March 10 IEP that was not signed by everyone and

---

[7]     Plaintiffs have submitted declarations from R.D.'s mother and from Ann Warnke
of Accotink Academy concerning R.D.'s improved performance since his placement at Accotink,
as well as a declaration from Jim Marsh stating that Roosevelt lacks a full-time program for
learning disabled/emotionally disturbed students.  These documents are not, however, relevant to
the Hearing Officer's finding that the March 30 IEP was invalid, and that R.D.'s placement
should be based on the February 10 IEP.

to which (the Hearing Officer found as a fact) Mr. Thomas objected on behalf of DCPS.  The

Hearing Officer reached this conclusion because no substantially new information about R.D.

was presented at the March 30 meeting (no new testing, evaluation, or anecdotal evidence

different from that available on February 10) and because he found the testimony of Mr. Thomas

credible and that of Ms. Brindley incredible.  Specifically, the Hearing Officer found credible Mr.

Thomas' testimony that his objections were ignored and that the 30-hour prescription was arrived

at only because plaintiffs' counsel directed Ms. Brindley to write down that number of hours in

order to achieve plaintiffs' goal of having R.D. placed in a private rather than a public school.[8]

In effect, the Hearing Officer determined that the March 30 IEP represented a bad faith attempt

by R.D.'s parents to "game the system" to obtain a private placement.  He found that the timing

of the two IEPs (one completed less than seven weeks after the other), plaintiff's counsel's

insistence on a private placement at the March 30, 2004 meeting, the fact that Accotink had been

contacted and had already accepted R.D. prior to receiving notice of the March 30 IEP, and the

fact that there appear to have been no significant factual developments or new information to

justify the trebling of R.D.'s prescribed hours of specialized instruction, supported the conclusion

that plaintiffs' ultimate goal was a placement at Accotink.  The Court will not second-guess the

credibility determinations and the factual findings of the Hearing Officer.  See Shore Reg'l High

Sch. Bd. of Educ. v. P.S., 381 F.3d at 199.

---

[8]        Mr. Thomas had testified:  "In order to get into those private schools, of course,
you need 'X'-amount of hours, you know, to appear on the IEP to indicate a full-time setting, so,
basically, [hours were] -- the word I used, 'jacked up,' or increased, to appear that this child
needs a full-time setting, to get to get this child to a private school."  Transcr. at 76-77.

That having been said, it follows that the Hearing Officer's conclusions that the February 10 IEP was valid and that the placement at Roosevelt was appropriate on the basis of that IEP were correct.  In the circumstances, the placement at Roosevelt was "reasonably calculated to enable [R.D.] to receive [the] educational benefits" to which he was entitled.  Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. at 207.  See also Kerkam v. McKenzie, 862 F.2d at 886.  For these reasons, the defendants are entitled to summary judgment. Furthermore, since judgment is being entered for defendants, plaintiffs are not entitled to reimbursement for the expenses they incurred in unilaterally placing R.D. at Accotink.  See Florence County School District Four v. Carter, 510 U.S. 7, 15 (1993) (school officials who conform to the IDEA's mandate to "give the child a free appropriate public education in a public setting . . . need not worry about reimbursement claims [for unilateral parental placements].").

Finally, it should be noted that plaintiffs' counsel put herself and her clients in a very uncomfortable position in this case.  She sought both to represent her clients as litigating counsel both before the Hearing Officer and before this Court, while at the same time effectively "testifying" as to what did and did not occur at the relevant meetings.  See Transcr. at 42-45.  In the future, she must choose between testifying under oath or serving as counsel; she will not be permitted to do both.[9]

---

[9]      "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client."  D.C. RULES OF PROF'L CONDUCT R. 3.7; see also ABA MODEL RULES OF PROF'L CONDUCT R. 3.7; ABA MODEL RULES OF PROF'L CONDUCT R. 3.7 cmt. 2 & 3 (trial court has proper objection when trier of fact "may be confused or misled by a lawyer serving as both advocate and witness. . . .  It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.").

A separate Order consistent with this Opinion shall issue this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: June 14, 2005